IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

IN RE: K.S. and I.S.

No. 25-ICA-120    (Cir. Ct. Fayette Cnty. Case No. CC-10-2010-CIG-6)

**FILED**

**October 24, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioners Kevin S.[1] and Penny S. ("Guardians") appeal the February 19, 2025, order from the Circuit Court of Fayette County. In that order, the circuit court allowed Respondent Paula M. ("Mother") to withdraw her petition to terminate the minor guardianship but nevertheless modified the guardianship. Mother filed a response in support of the circuit court's order.[2] The guardian ad litem filed a summary response. Guardians did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Guardians are the paternal grandparents the of minor children K.S. and I.S. Mother is the biological mother of the children. On March 28, 2022, Mother filed her first petition to terminate the guardianship, pro se. In the petition, she requested to terminate the guardianship because she was fully capable of giving her children a loving and safe environment and further, K.S. had expressed an interest in living with Mother. That petition was resolved by agreement of the parties as embodied in the circuit court's February 10, 2023, order which states that the guardianship would continue with Mother receiving visitation as more fully set out in the Residential Schedule. Relevant to the issues on appeal, the Residential Schedule states as follows:

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Guardians are represented by Brandon L. Gray, Esq., and Matthew A. Bradford, Esq. Mother is represented by Robert P. Dunlap II, Esq. Vickie Hylton, Esq., appears as the children's guardian ad litem.

(2) Whenever visitation for the Mother appears in the Order of the Court, it shall be defined as providing at the minimum for:

    (a)    The parental responsibility by the mother shall be Friday after school until school on Monday morning on the first and third weekends of the month.

    (b)    Mother's day the children shall be with the mother. In the event this provision requires the children to be with the mother. [sic] In the event that this provision requires the children to be with the mother on a day not falling within mother weekend, said mother shall receive the children at 9:00 a.m. on that day and shall return the children at 7:00 p.m. on said day.

    *(c)*    *The parents shall have the children on major Holidays as the parties can agree.*

    (d)    The Mother shall have the children for two nonconsecutive weeks in the summer.

(emphasis added).

On April 4, 2024, Mother filed another petition for termination of guardianship, this time by counsel. The petition alleged that Mother had undergone drug rehabilitation and had been sober for sixty-seven months so the guardianship was no longer needed to protect the children and that the children expressed a desire to live with her.

The circuit court ordered in camera interviews with the children on May 16, 2024, and appointed the GAL on May 22, 2024.

Following a hearing on July 29, 2024, the circuit court entered an order on August 14, 2024. In that order, the circuit court held that the children were to begin family therapy and have no visitation or contact with their father.[3]

Prior to the final hearing on January 27, 2025, Mother filed her Notice of Withdrawal of Petition for Termination of Guardianship which stated that the family counselor was unable to testify that reunification with Mother was appropriate at that time due to the limited number of family therapy sessions that had been conducted. At the January 27, 2025, final hearing, counsel for Mother explained that she was no longer seeking to terminate the guardianship due to the lack of meaningful counseling that had taken place but since the circuit court had interviewed the children in camera and the GAL had an opportunity to conduct its investigation, Mother was limited to "do something

---

[3] The children's father did not participate in this appeal and it does not appear from the record before us that he participated in the proceedings before this circuit court that led to this appeal.

smaller" and seek modification pursuant to the testimony of the GAL. The circuit court then explained to counsel for Guardians that Mother was attempting to seek a modification instead of a termination.

The GAL testified that the children told her that they do not want to reside with Mother but would like more time with her and increased flexibility. The children also stated that they both had been in contact with their father, in violation of the court's prior orders but stated that they wanted to continue to have contact with their father, who was in rehabilitation.

The circuit court then inquired whether the language in the February 10, 2023, order was correct in stating that "The parents shall have the children on major Holidays as the parties can agree." The circuit court noted that it believed that should say "Mother," not "parents" because the father was not permitted visitation. The Guardians objected to changing the word to "Mother" and their counsel argued the father should have some time as long as it is supervised. The GAL agreed with the circuit court and noted that the father should not be entitled to any unsupervised visitation. The circuit court determined that Mother and the Guardians shall alternate major holidays as the parties can agree. The circuit court ordered that the children would have contact with their father, supervised by the Guardians. The circuit court noted that if father wanted to modify the terms, then he could appear and move for modification.

Following the hearing, the circuit court entered the February 19, 2025, order finding that the petition to terminate the guardianship was withdrawn and ordering that its prior orders granting the guardianship remained in place. The circuit court also ordered:

> 2. That the visitation schedule between the Mother and the Guardians shall continue in accordance with the February 10, 2023 Order and any future visitation that require the Mother's visits to be switched due to a scheduling conflict with one of the children's schedules shall be made up with the Guardians working with the Mother to ensure this happens.
>
> 3. That Paragraph 2(c) of the Order entered on February 10, 2023 shall be modified to the following, "the Mother and Guardians shall alternate visitation on major holidays as they can agree." For example, if the Guardians have their visitation on Thanksgiving of that year, then the Mother would have her visitation on Christmas and continuing to alternate major holidays in this regard.
>
> 4. That all parties shall continue family therapy for at least two (2) more sessions; however, the Mother and the children are encouraged to continue their therapy sessions jointly thereafter.

3

5. That the Father shall receive supervised telephonic visitation with the children once per week for thirty (30) minutes with such visits being supervised by the Guardians. The Guardians shall gain access to the childrens' [sic] phones and block the Father's number, or any number the Father could access, from calling the childrens' [sic] phones. The Father must call one of the Guardian's phones to exercise his telephonic visitation. The Father shall make no negative/inappropriate comments about any party or discuss this proceeding with the children or the call shall be terminated. Additionally, the Father's telephonic visitation shall be scheduled during a time that does not interfere with the Mother's visitation time.

6. The children are not permitted to see the Father in person should he come to the Guardians' home for a visit as visits by the Father with the Guardians can be accomplished on weekends the children are visiting their Mother. Should the Father violate this provision he will be found to be in contempt of this Court's Order.

7. That all provisions of prior Orders in this matter not modified herein today shall remain in full force and effect.

It is from this order that Guardians appeal. We apply the following standard of review:

When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal.

Syl. Pts. 1 and 2, *In re Guardianship of A.C.*, 240 W. Va. 23, 807 S.E.2d 271 (2017) (cleaned up).

Guardians argue that the circuit court violated their due process rights by modifying its prior orders after Mother withdrew her petition to terminate the guardianship. We disagree. Guardians point to *Brittany S. v Amos F*., 232 W. Va. 692, 753 S.E.2d 745 (2012), to support their argument that the circuit court could not act once the petition to terminate the guardianship was withdrawn. In *Brittany S*., the child's mother was the primary residential parent when the child's maternal great-grandparents filed a petition to be

appointed guardians of the child. The maternal great-grandparents would later withdraw their petition, and primary custody was granted to the child's father. On appeal, the Supreme Court of Appeals of West Virginia, in reversing the lower courts' orders, noted that, "[w]hile the mother had notice of a custody issue with the great-grandparents, she had no notice of the same with the father." *Id*. at 697, 753 S.E.2d at 750.[4] *Brittany S*. is easily distinguishable from the matter at hand because Guardians were clearly on notice of a custody issue with Mother, and were heard on the issue. Further, the Supreme Court of Appeals specifically noted that the "case is not a model of procedural or technical clarity, *or one upon which any prospective litigants should rely to support any future legal position*[.]" *Id*. at 699, 753 S.E.2d at 752 (emphasis added).

In this matter, as opposed to *Brittany S*., the guardianship was already established. In that regard, West Virginia Code § 44-10-3(i) (2013) provides that a court may modify a minor guardianship on its own motion, subject to the requirements of the statute, when such modification is in the best interest of the children.[5] Accordingly, we find no error in the circuit court's modification of its prior orders.[6]

Therefore, we affirm the circuit court's February 19, 2025, order.

Affirmed.

**ISSUED:** October 24, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

---

[4] Our review of *Brittany S*. demonstrates that notice and the right to be heard by the party whose rights are affected, and the best interest of the children, are the interests with which we are concerned with here, not procedural technicality.

[5] *See also In re S.W*., 236 W. Va. 309, 314, 779 S.E.2d 577, 582 (2015) (Noting that a circuit court has statutory authority to modify a guardianship, subject to appropriate evidence); *In re K.H.,* 235 W. Va. 254, 773 S.E.2d 20 (2015) (recognizing in the context of a termination of guardianship that an analysis of the best interests of the child is imperative in matters involving modification of custody).

[6] While the circuit court and the parties refer to the circuit court's action as a modification of its prior orders, this Court notes that, at least as it pertains to the holiday schedule, the circuit court's action is better described as resolving an ambiguity in its February 10, 2023, order and not a modification.